UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY BROWN,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

CASE NO. C17-1455 BAT

**ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS**

Plaintiff appeals the denial of Disability Insurance Benefits. She contends the ALJ erred by concluding that plaintiff had experienced medical improvement related to her ability to work as of January 26, 2004. Dkt. 13, at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** under sentence four of 42 U.S.C. § 405(g) for an immediate award of benefits.

## BACKGROUND

Plaintiff's case has languished in administrative proceedings since she filed her disability application in February 1999. Tr. 161–63. Plaintiff has attended four administrative hearings. Tr. 74–116; Tr. 940–73; Tr. 1382–1418; Tr. 2245–2293. At one point, the Appeals Council lost track of plaintiff's case for almost eight years and eventually remanded for further proceedings.

ORDER REVERSING AND REMANDING FOR AN AWARD OF
BENEFITS - 1

Tr. 978. The federal district court has remanded the claim for further proceedings twice. Tr. 731–32; Tr. 1456–68.

After plaintiff's third administrative hearing, the ALJ issued a June 2014 decision concluding that plaintiff was disabled from February 13, 1996, through January 25, 2004, but that as of January 26, 2004, she was no longer disabled due to medical improvement. Tr. 706–23. In 2016, this Court reversed and remanded for further proceedings because the ALJ misevaluated both credibility and residual functional capacity ("RFC") as to the latter period. Tr. 1459–64. With respect to credibility, the Court specified three errors: (**1**) the ALJ had discounted plaintiff's symptoms due to lack of treatment between 2003 and 2005 without acknowledging extensive testimony that the lack of treatment was due to difficulties with insurance and inability to pay; (**2**) while the ALJ cited periods of improvement from 2006 to 2008 and from 2010 to 2011, plaintiff reported significant symptoms before, during, and after those periods; and (**3**) the ALJ did not adequately consider that during periods that plaintiff showed increased activity, plaintiff also experienced symptom exacerbation due to the increased activity. Tr. 1459–62. With respect to RFC, the Court specified two errors: (**1**) the ALJ's misevaluation of credibility led to an inaccurate RFC; and (**2**) the ALJ included a sit/stand requirement in the RFC but failed to specify the frequency with which or amount of time plaintiff needed to perform each activity. Tr. 1462–64.

After a fourth administrative hearing, the ALJ issued a July 2017 decision. Tr. 1424–66. The ALJ again concluded that plaintiff was disabled from February 13, 1996, through January 25, 2004, but that as of January 26, 2004, she was no longer disabled due to medical improvement. Tr. 1434. The ALJ specified only two meaningful differences in assessed RFC between the period of disability (February 13, 1996 to January 25, 2004) and the period of non-

disability (January 26, 2004 to present). First, ALJ responded to this Court's scope of remand by noting in the non-disability period RFC that claimant can stand and/or walk for 6 hours in an 8-hour workday; can stand for 1 hour at a time and walk for 1 hour at a time; can sit for 6 hours in an 8-hour workday; and needs to alternate sitting and standing about every hour. Tr. 1438. Second, the ALJ omitted from the non-disability period RFC the restriction found in the disability period RFC: "She would have been absent, tardy, or left the workplace early three or more days per month due to her mental health symptoms including her inability to maintain concentration throughout an 8-hour workday." *Compare* Tr. 1433 *with* Tr. 1438. The ALJ thus found that plaintiff's condition medically improved since January 26, 2004, because she was no longer debilitated by mental-health symptoms that would cause her to be absent, tardy, or leave the workplace three or more days per month. The ALJ did not, however, meaningfully respond to this Court's specification of errors with respect to the ALJ's credibility determination and its impact on RFC: (**1**) the lack of treatment from 2003 to 2005 appeared to be financially driven; (**2**) the periods of improvement included and were interspersed with significant symptomology; and (**3**) exacerbation of symptoms with increased activity. As the Appeals Council did not exercise jurisdiction, the ALJ's July 2017 decision is the Commissioner's final decision.

## DISCUSSION

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000). Plaintiff contends that the ALJ's conclusion that plaintiff had experienced medical improvement related to her ability to work as of January 26, 2004, was not supported by substantial evidence in the record and was based on an erroneous weighing of the medical opinion evidence. The

Court agrees. The ALJ failed to produce evidence sufficient to rebut the presumption of plaintiff's continuing disability.[1] Because the record is fully developed and nothing would be gained by requiring plaintiff to endure another two decades of administrative proceedings, the Court reverses and remands for an immediate award of benefits.

It is a well-established principle within the Ninth Circuit that once an applicant for disability benefits has carried her burden of proving a disability, "a presumption of continuing disability arises in her favor." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007) (same); *Perry v. Heckler*, 722 F.2d 461, 464 (9th Cir. 1983) (same). The presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence sufficient to rebut the presumption. *Bellamy*, 755 F.2d at 1381; *Murray*, 722 F.2d at 500; *Strengberg v. Colvin*, 2016 WL 2349092, at *5 (C.D. Cal. May 3, 2016); *Villarino v. Astrue*, 2013 WL 441748, at *2 (W.D. Wash. Jan. 14, 2013); *Hanna v. Astrue*, 2012 WL 966174, at *7 (W.D. Wash. Jan. 23, 2012); *Bower v. Astrue*, 2011 WL 5057054, at *4 (W.D. Wash. Oct. 3, 2011); *see also Medina v. Colvin*, 2015 WL 5448498, at *9 (N.D. Cal. Aug. 21, 2015) (examining the development of Ninth Circuit law on the issue of the presumption of continuing disability, concluding that the presumption remains good law, and applying it); *Palacios v. Astrue*, 2012 WL 601874, at *1 (C.D. Cal. Feb. 23, 2012) (noting that

---

[1] To determine if a claimant continues to be disabled, an ALJ conducts an eight-step inquiry for a disability claim, determining: (**1**) whether the claimant is engaging in substantial gainful activity ("SGA"); (**2**) whether the claimant has an impairment or combination of impairments which meet the criteria of a listed impairment; (**3**) whether medical improvement has occurred; (**4**) whether medical improvement is related to the claimant's ability to work; (**5**) whether an exception to medical improvement applies; (**6**) whether all the current impairments in combination are severe; (**7**) what claimant's residual functional capacity is and whether claimant can perform past relevant work; and (**8**) whether other work exists in significant numbers that the claimant can perform. 20 C.F.R. § 404.1594.

1  the claimant retains the burden of *persuasion*, but that the presumption of continuing disability

2  shifts the burden of *production* to the Commissioner). In order to decide whether a claimant's

3  disability has continued, the Commissioner must determine if there has been medical

4  improvement in the claimant's impairments and, if so, whether this medical improvement is

5  related to the claimant's ability to work. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). Even

6  where medical improvement related to the claimant's ability to work has occurred, the

7  Commissioner must show that the claimant is currently able to engage in substantial gainful

8  activity ("SGA") before finding that the claimant is no longer disabled. 42 U.S.C. § 423(f); 20

9  C.F.R. § 404.1594(a).

The ALJ concluded that plaintiff had experienced medical improvement, and her disability ended, as of January 26, 2004. Tr. 1437. According to the ALJ, prior to January 26, 2004, plaintiff had been undergoing extensive mental health treatment for PTSD, secondary to trauma from two separate motor vehicle accidents in 1996; however, on January 25, 2004, plaintiff was discharged from mental health services due to improvement by treating psychologist D. Merilee Clunis, Ph.D. Tr. 1437 (citing Tr. 762, 792). The ALJ supported this characterization of the record by citing medical records in 2004 in which there were no further complaints of PTSD or other mental conditions—though the cited medical records were entirely from dermatology and dental visits. Tr. 1437. The Court finds that the Commissioner has failed to produce evidence sufficient to rebut the presumption of continuing disability because the ALJ mischaracterized Dr. Clunis's notes; misevaluated the medical evidence; and failed to address the Court's earlier scope of remand regarding plaintiff's difficulties paying for medical treatment.

First, the ALJ mischaracterized treating psychologist Dr. Clunis's notes. Although the ALJ cited Dr. Clunis's notes for the proposition that plaintiff was discharged on January 25, 2004, due to medical improvement, no such conclusion can be drawn from Dr. Clunis's notes. Dr. Clunis reported that she saw plaintiff for weekly sessions from July 2002 to May 2003; saw her biweekly from May 2003 to November 2003; and had her last session with plaintiff on January 26, 2004. Tr. 762. Dr. Clunis reported:

> Initially we focused on the trauma of the car accidents and she reported noticeable improvement in her symptoms. Then we addressed the aftermath of the accidents including the effects of chronic pain and disability on her and on her family. Eventually we also addressed issues from her childhood as well as difficulties in her marriage.
>
> Kimberly worked very hard in therapy and made significant progress.

Tr. 762. Although Dr. Clunis referred to "significant progress," nowhere did she state that plaintiff was *discharged* due to medical improvement and there is no indication that the "improvement in her symptoms" referred to by Dr. Clunis led a less restrictive RFC or enabled her to complete SGA full-time.[2] The ALJ cites to Dr. Clunis's handwritten notes, but the only relevant notes provide: "1/26/04 Review & Term." This is why in the 2005 administrative hearing the ALJ noted that Dr. Clunis "basically says I've seen her for x amount of time. She's

---

[2] At the 2005 administrative hearing, plaintiff was asked to what "significant progress" Dr. Clunis referred. Tr. 955–56. Plaintiff testified:

> When I started seeing her, she made me talk about the car accident where I thought my son had been killed. I had to talk about it all the time. And she was trying to desensitize me, so I wouldn't get so upset and cry that I could try to make it to some e[xt]ent not so big in my mind I suppose. And that was my significant progress, I stopped crying when I talked about it. I was able to mention facts and talk about it a little bit without crying.

Tr. 956.

ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS - 6

made progress. Thank you very much. So they don't really give me a basis to be able to conclude anything." Tr. 963. At the same hearing, medical expert Norman Gustavson, Ph.D., agreed that Dr. Clunis's notes were inconclusive and opined that according to his review of the evidence plaintiff would continue to have difficulty with persistence and pace up to a marked degree. Tr. 963, 966.

Second, the ALJ misevaluated the medical evidence of medical improvement by rejecting the opinions of treating and examining physicians and medical experts but accepting a nonexamining psychologist's opinion (whose identical opinion had been rejected with respect to the period of disability) and to the *absence* of documented mental complaints while being seen for dermatology and dental treatment. As a general rule, more weight should be given to the opinions of treating and examining doctors than to the opinions of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. *Lester*, 81 F.3d at 831. Here the ALJ cited *no* cognizable evidence of medical improvement, instead relying on the 2015 opinion of nonexamining psychologist Matthew Comrie, Psy.D., that plaintiff suffered only from moderate concentration and persistence limitations that would not interfere with full-time work even though the ALJ had necessarily rejected identical conclusions from Dr. Comrie's 1999 opinion. *Compare* Tr. 1504 (Dr. Comrie's 2015 opinion) *with* Tr. 519 (Dr. Comrie's 1999 opinion). There is no explanation why what was essentially the same nonexamining opinion was treated differently in the different periods. Also, quite puzzlingly, the ALJ concluded that because in 2004 plaintiff sought consultations for treatment of skin moles and for her teeth without discussing mental impairments with the dermatologist or dentist that

such silence constituted affirmative evidence that plaintiff no longer suffered from mental limitations. Tr. 1437. That supposition was unreasonable. In contrast, post-January 25, 2004, treating primary care physician Agata Sikora, M.D., examining psychiatrist David B. "Pat" Jarvis, M.D., examining psychologist Kenneth A. Hapke, J.D., Ph.D., and examining psychologist Jan M. Kouzes, Ed.D., all opined that plaintiff's mental impairments continued to impact her ability to maintain attendance on a regular and continuing basis. Tr. 1373; Tr. 1837; Tr. 1863; Tr. 1869. Similarly, in the 2014 administrative hearing, medical expert Kenneth Asher, Ph.D., was asked whether at present plaintiff continued to be as impaired mentally as she was in 2001 and Dr. Asher responded, "It appears so. . . . [A]pparently, she is still suffering serious problems, but I just don't know how severe they are, nor even if she still qualifies for the same diagnoses." Tr. 1413. Moreover, the medical notes from Community Psychiatric Clinic from 2014 to 2016 endorse mental symptoms similar to those present prior to January 26, 2004. *See* Tr. 1936–64.

Third, the ALJ ignored the scope of review set forth by this Court in its 2016 order of remand. In 2016, the Court found that the ALJ had harmfully erred by failing to consider that plaintiff's lack of treatment between November 2003 and 2005 was related to loss of medical insurance, the inability of her mother to continue assisting with medical payments, and refusal of treatment due to lack of payment. Tr. 1460–61. At the most recent 2016 administrative hearing, plaintiff again testified that she was unable to see her primary care physician regularly in 2004 and 2005 due to loss of insurance and lack of financial means. Tr. 2281. Nonetheless, instead of addressing this Court's stated concerns, the ALJ ignored them, concluding unreasonably that a single year of 2004 dermatology and dental records showed that plaintiff no longer suffered from mental limitations. Tr. 1437.

Put simply, the ALJ failed to produce evidence sufficient to suggest medical improvement. In fact, the ALJ conflated the period of disability with the purported period of non-disability. The ALJ referred to plaintiff's daily activities and mental status exams but failed to discuss how these activities and abilities differed before and after January 26, 2014, and failed to connect them to an increased capacity to engage in SGA. *See* Tr. 1445–47. The ALJ discredited plaintiff's mental complaints by referring to two purportedly inconsistent statements: a 2015 statement made to examining psychologist Dr. Jarvis; and a 2016 statement made to Dr. Kouzes. Tr. 1447. In 2015, plaintiff told Dr. Jarvis that she was let go in *1996* "because my employer deemed me a liability problem/I couldn't do my job."[3] Tr. 1828. In 2016, plaintiff told Dr. Kouzes that she had not worked *since 1996* because, among other reasons, she "didn't want to go back to work." Tr. 1866. Neither statement regarding her condition *since 1996* demonstrates medical improvement *since 2004*, particularly given that both Dr. Jarvis and Dr. Kouzes endorsed continuing, significant mental limitations that remained unrebutted by affirmative evidence. No treating or examining doctor or medical expert opined that plaintiff experienced medical improvement sufficient to enable her to engage in SGA, and the ALJ failed to delineate how plaintiff's daily activities or test results differed between the period of presumed disability and the purported period of non-disability.

The ALJ had no legal or evidentiary basis for concluding that plaintiff experienced medical improvement since January 26, 2004, and the Commissioner has therefore failed to produce evidence sufficient to rebut the presumption of continuing disability. The Court credits

---

[3] It bears noting that this statement is in no way inconsistent with leaving a job due to mental and physical limitations. Moreover, Dr. Jarvis noted that plaintiff's "responses seemed honest, and relevant information beyond a bare minimum was volunteered," Tr. 1835, and opined that plaintiff would have "moderate to severe limitations in her ability to respond appropriately to or tolerate the pressures and expectations of a normal work setting," Tr. 1837.

ORDER REVERSING AND REMANDING FOR AN AWARD OF
BENEFITS - 9

as true the medical opinions of Drs. Asher, Gustavson, Hapke, Kouzes, Jarvis, and Sikora and remands for an immediate award of benefits because (**1**) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (**2**) there are no outstanding issues that must be resolved before a determination of disability can be made; and (**3**) it is clear from the record that the ALJ would be required to find the plaintiff disabled were such evidence credited. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The record has been fully developed over nearly two decades and further administrative proceedings would serve no useful purpose. *Id.*

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for an award of benefits.

DATED this 17th day of May, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS - 10